AMALGAMATED CLOTHING WORK-
ERS OF AMERICA, AFL–CIO,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

T. I. L. Sportswear Corporation,
Intervenor.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

T. I. L. SPORTSWEAR CORPORATION,
Respondent,

Amalgamated Clothing Workers of Amer-
ica, AFL–CIO, Intervenor.

T. I. L. SPORTSWEAR CORPORATION,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 16346, 16388, 16564.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 8, 1962.

Decided Feb. 8, 1962.

Mr. Arthur M. Goldberg, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. David E. Feller, Washington, D. C., was on the brief, for petitioners in No. 16346 and intervenor in No. 16388. Mr. Jerry D. Anker, Washington, D. C., also entered an appearance for intervenor in No. 16388, and petitioner in No. 16346.

Mr. Paul J. Spielberg, for National Labor Relations Board, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, Gen. Counsel, National Labor Relations Board, Dominick L. Manoli, Associate Gen. Counsel, National Labor Relations Board, Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, and Melvin Pollack, for National Labor Relations Board, were on the brief, for respondent in Nos. 16346, 16564, and petitioner in No. 16388. Mrs. Nancy M. Sherman also entered an appearance for National Labor Relations Board.

Mr. William J. Threadgill, Columbus, Miss., of the bar of the Supreme Court of Mississippi, pro hac vice, by special leave of court, with whom Mr. Leonard J. Calhoun, Washington, D. C., was on the brief, for intervenor in No. 16346, respondent in No. 16388, and petitioner in No. 16564.

Before EDGERTON, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Three petitions for review of actions of the National Labor Relations Board (Board) were consolidated as follows: (1) No. 16346 comes to this court on the petition of the Amalgamated Clothing Workers of America, AFL–CIO (Union) to modify part of the Board's order denying relief sought by the Union against T. I. L. Sportswear, Inc. (Company) under Section 10(c) of the National Labor Relations Act as amended, 61 Stat. 146 (1947), 29 U.S.C.A. § 160(c); (2) No. 16388 comes to us on the petition of the Board for enforcement of its order against the Company directing the hiring of 14 applicants for employment and for other relief, and for restitutionary relief to a 15th applicant already hired; (3) No. 16564 comes before us on the petition of the Company to set aside the Board's order relating to the employment of the 15 employees in question and granting other relief. The petition of the Company was originally filed in the Fifth Circuit and was transferred from that Circuit to this court.[1]

In cases Nos. 16388 and 16564 the Board found that the Company had violated Section 8(a) (3) of the Act, 29 U. S.C.A. § 158(a) (3), by refusing to hire 15 qualified applicants who had made repeated applications solely because of their prior union activities while they were employed in garment production in the same plant before the plant and equipment had been taken over by the Company. In case No. 16346 the Board found that the Com-

1. The Board's decision and order are reported as 131 N.L.R.B. No. 28 (1961).

pany's failure to hire the 16th applicant, Roxie Lee Bagwell, was not in violation of the Act.

## Background Facts

The Company's plant is located in Aberdeen, Mississippi, a community of about 6500 population. From 1954 until late 1958 this plant was owned and operated by Saxon Trousers Manufacturing Company (Saxon). From 1955 until the closing of Saxon's plant following a strike, Saxon operated under a bargaining agreement with Local 715 of the Union, to which at least 85% of its employees belonged. During the 1958 strike a majority of the employees joined in the strike but only a small number of strikers engaged in picketing the plant. The last election of union officers of Local 715 was held in March 1958 and the results of the election were posted for approximately one week on two bulletin boards of the Company where the information was available to all persons having access to the plant. The identity of those who engaged in picketing and who held office becomes relevant because of the 15 persons refused jobs, all but one were, in 1958, either union officials (9 of them) or walked on the picket line.

The Saxon plant and equipment were purchased by the Company after October 1958. Early in January 1959 the Company hired Barksdale, who had been a supervisor under Saxon's ownership, as assistant manager of the Company's plant. The Company operated two other plants in nearby towns, one at Amory, Mississippi, and one at Smithville, Mississippi. Neither of these plants has contracts with any union. An employee of the Amory factory, one Boyd Young, was sent from Amory to Aberdeen to act as manager of the newly acquired plant. On January 21st the plant opened and began to receive applications for work. Production was commenced early in February 1959. During January and February over 500 applications for employment were received by the Company, including about 150 persons who were former employees of Saxon. A substantial number of the other applicants had experience working in garment factories. About 150 applicants were hired at the commencement of operations, including a great many former Saxon employees. None of the 9 officials of Local 715, who are included in the 15 complaining employees in this case, was hired. During February the Company hired an additional 50 employees from the applications then on hand. Again the Company failed to hire any of the 9 officials of Local 715. In February 1959 the Company advised the United States Department of Labor that it was unable to find enough experienced workers for the operation of its plant and requested immediate permission to hire up to 100 "learners" at less than minimum wages. In March the Company advertised on Aberdeen radio stations and in local newspapers stating that it had immediate openings for experienced operators. In response to these ads, 6 of the 9 Local 715 officials called at the plant and renewed their applications. They were invited to register as available but none was hired. In the latter part of March, the Company selected an additional 50 employees and again none of the 9 officials from Local 715 was hired although they were still available.

In April 1959, Mae Gosa, an officer of Local 715, telephoned the Company without revealing her name. After describing her experience in response to questions she was asked to give her name and upon doing so the manager stated that no operators were needed. In the month of May 1959, Mae Gosa and two other officers of the Union again called at the plant and were advised that no employment was available.

All of the 14 persons ordered hired under the terms of the Board's order had made more than one and in some cases numerous efforts to get employment at the plant but were refused employment. Verbie Grant, a member but not an officer of the Union, and a former employee of the Saxon Company, continued to make applications to the Company during 1959 and 1960. In July 1959 Grant was advised by plant manager Young that he

had a sufficient number of applications on hand and advised Grant to call back every six months. In April 1960, Grant called Manager Young by telephone and was asked and gave her experience in garment work. After some discussion of qualifications, Young asked her name and upon hearing it said there were no openings available. In one form or other this pattern was repeated as to each of the 14 persons as to whom the Board directed employment in this case. On one occasion when two former Saxon employees who were Union members conferred with Young about employment, he insisted that they write their names on slips of paper although their applications were already on file. The testimony discloses that as he put the slips of paper in his pocket he said, "'I'll probably lose this."

During this period of time three ex-Saxon employees were hired by the Company after they advised the manager that they intended to have nothing more to do with the Union. As late as September 1959, the Company, declaring that "an adequate supply of experienced workers * * * is not available for employment," made an additional application to the United States Department of Labor to hire 50 "learners" at less than the minimum wages. When the Department of Labor asked the Company why it had not hired Misses Banks, Covin, Nadeen Gosa, Grant, Hickman, Rackley and Mae Gosa, all of whom had repeatedly asked for employment, the answer was that these 7 people were too few to satisfy the Company's requirements but that they would be contacted as to their suitability for employment. The Company did not communicate with any of them thereafter.

### (1.)

Against this background, which of necessity is only a brief summary of the evidence before the Board and before the trial examiner, the Board affirmed the trial examiner's findings that the Company had failed to hire Mary Jordan until April 22nd, 1959 (when she in effect renounced the Union), and refused to hire Carter, Mae Gosa, Banks, Rackley, Nadeen Gosa, Hickman, Covin, Geneva Jordan, Roebuck, Evelyn and Hugh Bowen, Grant, Favela and Scott because of Union membership and Union activities during their tenure as Saxon employees and that this was in violation of Section 8(a) (3) and (1) of the Act. The Board's order required the Company to cease refusing to hire applicants or otherwise discriminating against them to discourage them from membership in Local 715 or any other labor organization, and from infringing in any way upon the employees' rights under the Act. In addition, the Board's order requires the Company to offer employment to the 14 discriminatees who have been refused work, to make them and a 15th person, Mary Jordan, whole for any loss of pay suffered by reason of the discrimination against them and, finally, to preserve relevant payroll records and to post appropriate notices with reference to the Board's order.

It is the position of the Company that the Board failed to give consideration to the fact that the Company hired 132 of the 173 former Saxon employees, many of whom had been members of Local 715, and urges that this shows the Company's good faith and a lack of hostility towards the Union. The Company also urges vigorously that the trial examiner exhibited bias and prejudice against the Company at all stages during the hearing, and in support of this contention points out the examiner's long employment as a member of the Board's legal staff. The Company further contends that there is no proof in the record that the Company or its responsible officers were aware of the union activities or union affiliation of the 16 complainants, including the 15 as to whom the Company was directed either to tender employment, make restitution, or both.

### (2.)

There is no doubt that if the Company refused to hire the individuals here involved because of their union membership or union activities, the Company thereby violated Section 8(a) (3) and (1) of the Act. Phelps Dodge Corp.

v. N. L. R. B., 313 U.S. 177, 186–187, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); Piasecki Aircraft Co. v. N. L. R. B., 280 F. 2d 575, 585 (3d Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961). Viewing the record as a whole and bearing in mind that complaints of the kind here are normally supportable only by the circumstances and circumstantial evidence, see N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 597, 602, 61 S.Ct. 358, 85 L.Ed. 368 (1941), we hold (1) that there is substantial evidence in support of the Board's findings that the Company was aware of the union activity of the 16 complainants during the period while they were employed by Saxon; and (2) that during all times pertinent to these complaints the Company was in need of experienced garment workers; (3) that the Company refused to employ the complainants notwithstanding their qualifications, and (4) that the refusal to employ the complainants was due to their prior union activity and union affiliation. On the other hand, we do not think that the 16th applicant, Roxie Lee Bagwell, for whom the Board ordered no relief, was refused employment so clearly because of her union affiliation as to justify us in disturbing the Board's contrary conclusion in her case. We thus affirm the Board's determinations as to all 16 applicants.

The very nature of the complaints and the relationship of the parties make direct testimony on these issues difficult if not impossible to obtain.

"The Board was justified in relying on circumstantial evidence of discrimination and was not required to deny relief because there was no direct evidence that the employer knew these men had joined Amalgamated and was displeased or wanted to make an example of them." N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 602, 61 S.Ct. 358, 367, 85 L.Ed. 368 (1941).

### (3.)

We have examined the record with particular care in view of the great emphasis which the Company has placed upon its contention that the trial examiner showed bias and prejudice against the Company and in favor of the complainants and the Union. The conduct of the hearing is by no means free from error and could hardly be regarded as a model hearing. But giving full weight to our conclusions with respect to the conduct of the hearing, we are unable to say that any errors which occurred or any of the conduct of the Examiner were such as to constitute reversible error and nothing occurred which would alter the basic facts demonstrated by the record. The possibility that the 9 union officers and 6 other active union members were merely the victims of chance or coincidence in their failure to obtain employment with the Company is so remote as to be not entitled to credence. The sustained efforts of the Company to get permission to hire "learners" on the ground that experienced people were not available and the Company's efforts to secure experienced employees through advertising by newspaper and radio are completely inconsistent with the adamant refusal to hire any of the 15 persons who were the subject of the Board's remedial order, since all of them were experienced, not only in garment work, but in this particular plant. The Board properly refused to strike the Company's answer to the complaint of the Regional Director and thereupon to enter judgment on the pleadings simply because of the Company's inadvertent failure to serve a copy of its answer on the Union. The Company filed a timely and adequate answer with the Board's Regional Director and its failure to serve a timely copy on the Union did not prejudice the Union in any way. Had it operated to the disadvantage of the Union the Examiner, of course, could have properly allowed continuance of the matter to allow the Union additional time to prepare for the hearing and thus remedy the Company's failure to make timely service. The Union made no such request for a continuance and suggested nothing to indicate that it had been prejudiced by the Company's

inadvertent failure to make service in proper time.

 There was no allegation in the complaint that the Company had failed to bargain with the Union, and hence there was no issue in the case with reference to the Union's majority. Nothing in the record would indicate that the Union represented a majority of the Company's employees or that it would have represented a majority of them if the complainants had in fact been hired. The Board, therefore, properly refused to order the Company to bargain with the Union.

Affirmed.